# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2553 | **DATE** | 3/6/2001 |
| **CASE TITLE** | DANNY BELL, et al. vs. MARSEILLES ELEMENTARY SCHOOL, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] City of Marseilles' motion for summary judgment [59-1] is granted as to Count II. Officer Dale Long's motion for summary judgment [60-1] is granted as to Counts V and VI-VIII and denied for Count II. Marseilles Elementary School District #150's, James C. Bagley's, Christopher D. Mehochko's, and Bradley Guilinger's motion for summary judgment [61-1] is granted as to Counts I and IV. Plaintiffs are granted summary judgment on Count II as it pertains to Officer Long's liability. Plaintiffs and Officer Long shall present their joint final pretrial order and agreed jury instructions on damage claims relating to Count II on March 30, 2001 at 9:00 a.m., plaintiffs' draft to Officer Long by March 23, 2001. Trial is set on April 3, 2001 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | | MAR - 7 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | 101 |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 01 MAR -6 PM 5:17 | 3/6/2001 | | |
| | | | | date mailed notice | | |
| SB | courtroom deputy's initials | | Date/time received in central Clerk's Office | jad | | |
| | | | | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANNY BELL, et al.                )
                                  )
              Plaintiffs,         )  No. 00 C 2553
                                  )
       v.                         )  Suzanne B. Conlon, Judge
                                  )
MARSEILLES ELEMENTARY SCHOOL      )
DISTRICT #150, et al.             )
                                  )
              Defendants.         )

DOCKETED

MAR - 7 2001

## MEMORANDUM OPINION AND ORDER

Danny Bell, Jacob Caputo ("Caputo"), Michael Dorton, Aaron Wise, Jordan Daniels, and Joshua Daniels (collectively "plaintiffs"), by their fathers, sue the following defendants: Marseilles Elementary School District #150 ("Marseilles Elementary"), City of Marseilles ("the city"), and Superintendent James C. Bagley ("Bagley"), Officer Dale Long ("Officer Long"), Christopher D. Mehochko ("Mehochko"), and Bradley Guilinger ("Guilinger"), in their individual capacities (collectively "defendants"). Plaintiffs sue all defendants for an unreasonable search, pursuant to 42 U.S.C. § 1983 ("§ 1983") (Counts I-II). Plaintiffs sue Marseilles Elementary for violation of the Illinois School Code, 105 ILCS 5/10-22.6(e) (Count III). Plaintiffs sue Bagley, Mehochko, Guilinger, and Officer Long for false imprisonment (Counts IV-V). In addition, plaintiffs sue Officer Long for invasion of privacy, assault, and battery (Counts VI-VIII). Defendants move for summary judgment, pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.[1]

---

[1] Pursuant to agreement among the parties, the court will dismiss Count III and plaintiffs' claims regarding the Fifth and Sixth Amendments with prejudice.

## BACKGROUND

At all relevant times, plaintiffs were eighth grade students at Marseilles Elementary School. Bagley is the superintendent of Marseilles Elementary. Mehochko is the assistant principal of the school, and Guilinger is the gym teacher.

On April 27, 1999, plaintiffs entered the school locker room to change their clothes after gym class. There were approximately 30 to 35 male students in the class. While changing clothes, Caputo noticed that $61.50 was missing from his wallet. Caputo notified Guilinger about his missing money. Subsequently, two other students in the class reported missing money. Guilinger searched the locker room, but he did not find the money. All Caputo's money, except for 25 cents, was eventually found in an abandoned locker. The money lost by the other two students was not recovered.

Guilinger notified Mehochko about the remaining missing money. While waiting for Mehochko's arrival, Guilinger told the students they could not leave the gym room. Once Mehochko arrived, both he and Guilinger unsuccessfully searched the locker room for the missing money. At this point, they called Bagley, who contacted the Marseilles police department. The police department sent Officer Long to the school.

Upon arrival, Officer Long asked the students to identify the person responsible for the missing money. None of the students responded to Officer Long's inquiries. Consequently, Officer Long conducted a search of the students in the locker room. Mehochko, Bagley, and Guilinger did not participate in the search, but Guilinger remained present. Initially, Officer Long searched the students one at a time, but eventually began searching them two at a time. He searched the students in an area partitioned from the rest of the locker room by a privacy wall. During the searches, Officer Long required the students to either lift or remove their shirts, take off their socks and shoes, and empty

2

their pockets. In addition, he either checked their belt loops or had the students lower their pants for a visual inspection. No additional money was found as a result of Officer Long's search. After Officer Long left, Bagley walked the students back to class. None of the students were arrested or taken to the police office. At all relevant times, Officer Long had no policy making or final decision making power on behalf of the city.[2]

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a

---

[2] In opposing defendants' motions for summary judgment, plaintiffs offer evidence to support the following additional facts. Before Officer Long conducted the April 27th strip search, he drew the students' attention to his uniform and gun. Plaintiffs' Add. Facts at ¶ 1. In addition, Officer Long made the following remarks to the effect of: (1) "Some of you know me and know what a hard ass I can be"; (2) "Turn the money over now!"; and (3) "If you help me now I will remember that you did and a few years from now when you have driver's licenses and I stop you on Highway 6, I will let you off; you scratch my back and I'll scratch yours." *Id.* at ¶ 2. Defendants offer no evidence to dispute these additional facts.

3

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

**II. § 1983 claims**

In order to recover under § 1983, plaintiffs must establish they were deprived of their constitutional rights by an individual acting under the color of state law. *See* 42 U.S.C. § 1983; *Pickrel v. Springfield*, 45 F.3d 115, 118 (7th Cir. 1985). Plaintiffs contend defendants violated their Fourth and Fourteenth amendment constitutional rights to be free from unreasonable search and seizure.

The court must first determine the standard that governs this search of school students. The parties dispute whether *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) governs. Plaintiffs contend *T.L.O.* does not apply because that case involves an administrative search carried out by school officials, whereas in this case the school officials called the police to conduct a search, thus turning the search into a criminal investigation.

In *T.L.O.*, the Court found that in balancing the interests of schools and students, the search of a student does not require a showing of probable cause. Instead, the search must be (1) justified at its inception and (2) permissible in scope. *Id.* at 341-42. "A search of a student is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating the law or the rules of the school." *Id.* A search is permissible in scope when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Cornfield v. Consolidated High School District*, 991 F.2d 1316, 1320 (7th Cir. 1993).

This court need not determine whether the more stringent probable cause standard applies to this type of student search by police officers because Officer Long's search does not satisfy *T.L.O.'s* less stringent standards. It is undisputed that Officer Long's search was a blanket search of 30-35 students. He had no reasonable grounds for believing that any particular student he searched, including the plaintiffs, had taken the missing money. In fact, plaintiffs offer evidence to show Officer Long stated during the searches of several students that he knew they were not guilty. Plaintiffs' Facts at ¶ 7. Officer Long possessed no individualized suspicion of the students he searched. "Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where other safeguards are available..." *T.L.O.*, 469 U.S. at 342 (citing *Delaware v. Prouse*, 440 U.S. 648, 654-655 (1979)). As will be discussed below, the privacy interests implicated by a strip search are not minimal. The search was not justified at its inception.

Additionally, Officer Long's search was not permissible in scope because it was not reasonably related to the objectives of the search. Officer Long was searching the students for missing money, not drugs or weapons. There certainly was no risk of imminent harm to the students. Nevertheless, the search he conducted was invasive and degrading. It is undisputed that the boys were forced to: (1) remove their shirts, so Officer Long could shake the shirts and look in the boys' armpits; and (2) drop their pants, so Officer Long could perform a visual inspection of their underwear. Additionally, plaintiffs offer evidence to show Officer Long ran his fingers around the underwear waistband of some of the boys. Marseilles Elementary Statement of Facts ("Marseilles Facts") at ¶ 33. It is also undisputed that Officer Long searched some of the boys in groups of two.

Long contends the search was reasonable in scope because (1) the search was performed on a narrowly tailored group of students behind a privacy wall constructed for the students to shower; (2) there was minimal contact between Officer Long and the students; and (3) it was conducted in a boys' locker room where students always remove the same articles of clothing. These arguments are unpersuasive for several reasons. First, searching a group of 30-35 students can hardly be considered narrowly tailored when there is no individualized suspicion. Second, strip searches can be degrading, humiliating, and frightening, even with no physical contact. Third, forcing students to remove their clothes in front of a police officer searching for stolen money is in no way analogous to undressing during gym class. As the Seventh Circuit has recognized, a strip search of a child is a traumatic event and an invasion of some magnitude. *See Cornfield,* 991 F.2d at 1320-21; *Doe v. Renfrow,* 631 F.2d 91, 92-93 (7th Cir. 1980). Considering the intrusive nature of Officer Long's search and the absence of imminent harm, it is clear the search violated the constitutional standards set out in *T.L.O.*

### A. Officer Long

Public officials have qualified immunity from liability in § 1983 suits "if the law at that time was not clearly established, [such that] an official could not reasonably be expected to anticipate subsequent legal developments, nor could he be fairly said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal citations omitted). "Clearly established" means that a reasonable official would know what he is doing violates a constitutional right. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Plaintiffs bear the burden of proving a clearly established right. *Hannon v. Turnage,* 892 F.2d 653, 655 (7th Cir. 1990). Plaintiffs must show that the right was "clearly established in the particular factual context presented." *Polenz v. Parrott,* 883 F.2d 551, 554 (7th Cir. 1989).

Plaintiffs have shown that Officer Long's search violated plaintiffs' constitutional rights, regardless of whether a probable cause standard or the less stringent *T.L.O.* applies. Officer Long can fairly be expected to know that a blanket student strip search for the purpose of recovering stolen money violates the students' constitutional rights to be free from unreasonable searches. *See, e.g., Cornfield*, 991 F.2d at 1329-21 (strip searches of children are intrusive); *Renfrow*, 631 F.2d at 92-93 (strip searches of children are traumatic); *T.L.O.*, 469 U.S. at 342 (exceptions to the requirement of individualized suspicion generally only appropriate where search is minimally intrusive). Accordingly, Officer Long's motion for summary judgment on plaintiffs' § 1983 claims must be denied. Summary judgment must be granted in plaintiffs' favor.[3]

### B. Bagley, Mehochko, and Guilinger

Plaintiffs concede that the factual situation at issue is unique in that it involves a police investigation of students for criminal rather than administrative purposes.[4] Plaintiffs' Response at pp. 8-9. Consequently, plaintiffs have not pointed to legal precedent suggesting school officials possess clearly established constitutional duties in regard to monitoring a police search. Plaintiffs cannot show the school officials violated any *established* right by allowing Officer Long to pursue his investigation. There was no "factual roadmap of constitutionally violative conduct against which defendants here could have measured their own purposed course of conduct." *Landstrom v. Illinois Department of*

---

[3]The issue of whether a constitutional right was clearly established is a matter of law. *Landstrom v. Illinois Department of Children and Family Services*, 892 F.2d 670, 675 (7th Cir. 1990). A court can grant summary judgment *sua sponte* when there are no genuine issues of material fact. *Goldstein v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 86 F.3d 749, 750-51 (7th Cir. 1996).

[4]Mehochko testified he believed Officer Long's investigation was a police investigation and that he deferred to Officer Long's authority. Marseilles Facts at ¶ 37-38. The school officials offer evidence to show they did not participate in the search of the students. *Id.* at 40.

7

*Children and Family Services,* 892 Fed.2d 670, 677 (7th Cir. 1990). Accordingly, the school officials' motion for summary judgment in regard to plaintiffs' § 1983 claims must be granted.

## C. The city

Municipalities, including school boards, cannot be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 (1977); *City of Canton v. Harris,* 489 U.S. 658, 690 (1989). A municipality violates an individual's constitutional rights if: (1) the municipality has an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice exists, that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom with the force of law; or (3) the alleged constitutional injury was caused by a person with final policymaking authority. *Baxter By Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 735 (7th Cir. 1994).

Plaintiffs contend they have conclusively established the third prong of the municipality liability test. They offer evidence to show the mayor of Marseilles approved Officer Long's actions and stated his actions were within legal guidelines of departmental policy and procedures. Specifically, plaintiffs offer a Board of Education report that was sent to parents of Marseilles Elementary students. The report states, "Mayor Knudson reported to Mr. Mehochko that the police officer involved in the investigation had acted within legal guidelines of departmental policy and procedures." Plaintiffs' Statement of Material Facts ("Plaintiffs' Facts") at ¶ 8, Ex. B. It is true that "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision was final." *Cornfield,* 991 F.2d at 1326 (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988)). However, the statement offered by

plaintiffs does not refer to a specific policy regarding strip searches. It is not possible to decipher from this statement the specific policy or procedure the mayor had in mind. Without approving a specific unconstitutional practice, a person with policymaking authority cannot be held liable. *Id.* Furthermore, the only evidence plaintiffs offer to suggest the mayor approved Officer Long's actions is hearsay, which is inadmissible absent a showing that an exception applies. *See* Fed.R.Evid. 802.

Additionally, plaintiffs offer evidence to show the Marseilles chief of police never disciplined Officer Long for his behavior on April 27th. *Id.* at ¶ 9. However, failure by a policymaking official to take corrective action is insufficient to establish liability under § 1983. *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). Accordingly, the city's motion for summary judgment must be granted.

### D. Marseilles Elementary

As discussed above, Bagley, Mehochko, and Guilinger cannot be held liable under § 1983. Therefore, Marseilles Elementary may not be held liable for any custom or policy causing a § 1983 violation. Marseilles Elementary's motion for summary judgment must be granted.[5]

## III. Plaintiffs' tort claims

### A. Illinois Tort Immunity Act

The Illinois Tort Immunity Act shields state government employees from liability for tortious acts committed in the course of one's government employment. However, willful and wanton acts

---

[5]Plaintiffs' and Officer Long's contention that Officer Long was an agent of the school fails as a matter of law. A principal/agent relationship is consensual in nature, and the conditions of that relationship must be agreed to by the parties. *Jackson National Life Insurance Co. v. Gofen and Glossberg, Inc.*, 882 F.Supp 713, 720-21 (N.D. Ill. 1995). Plaintiffs have not offered evidence to establish this relationship. Additionally, Marseilles Elementary has offered evidence suggesting there was no principal-agent relationship between Officer Long and the school. Marseilles Facts at ¶¶ 37-42.

are specifically excluded. 745 ILCS 10/2-202. Willful and wanton acts are those committed with a conscious disregard for the safety of others. 745 ILCS 10/1-210. Plaintiffs have failed to offer sufficient evidence to establish the school officials engaged in wanton or willful conduct by trusting a police officer to properly conduct a student investigation. Accordingly, summary judgment must be granted in favor of the school officials regarding plaintiffs' false imprisonment claims.[6]

Officer Long also contends he is immune from tort liability under the act because plaintiffs offer no evidence showing his acts were wanton or willful. Plaintiffs concede Officer Long's contact with the students was minimal. Plaintiffs offer no evidence to establish Officer Long consciously disregarded the safety of the students. Accordingly, Officer Long's motion for summary judgment is granted in regard to plaintiffs' tort law claims.

## **CONCLUSION**

The city's motion for summary judgment is granted as to Count II. Officer Long's motion for summary judgment is granted as to Counts V and VI-VIII and denied as to Count II. Marseilles Elementary's, Bagley's, Mehochko's, and Guilinger's motion for summary judgment is granted as to Counts I and IV. Plaintiffs are granted summary judgment on Count II as it pertains to Officer Long.

---

[6]Even if the school officials actions could be considered willful and wanton, they could not be found liable for false imprisonment. Plaintiffs cannot establish as a matter of law that they were unlawfully restrained because they never possessed freedom of movement within the school. The Illinois School Code mandates compulsory school attendance of children between the ages of seven and sixteen years. 105 ILCS 5/26-1. School personnel possess power over students, and school personnel are permitted a degree of supervision and control that cannot be exercised over free adults. *Veronia School District 47J v. Action,* 515 U.S. 646, 655 (1995).

10

ENTER:

*Suzanne B. Conlon* (signature)
Suzanne B. Conlon
United States District Judge

March 6, 2001