# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2553 | **DATE** | 3/27/2001 |
| **CASE TITLE** | DANNY BELL, et al. vs. MARSEILLES ELEMENTARY SCHOOL, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant Long's motion for reconsideration of the court's summary judgment order of March 6, 2001 is denied. The parties shall present their joint final pretrial order and agreed jury instructions on the issue of damages on April 10, 2001 at 9:00 a.m.; plaintiff's draft to be submitted to defendant Long by March 30, 2001. Trial on April 30, 2001 stands.
ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 3/29/01 | 111 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | C.S. | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/27/2001 | |
| | | date mailed notice | |
| SB | courtroom deputy's initials | jnd | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 9 2001

DANNY BELL, et al.,

    Plaintiffs,

v.

MARSEILLES ELEMENTARY SCHOOL, et al.

    Defendants.

No. 00 C 2553

Suzanne B. Conlon, Judge

## MEMORANDUM OPINION AND ORDER

Plaintiffs are eight elementary school students who, by their fathers, sued Officer Dale Long ("Officer Long") in his individual capacity for an unreasonable search, pursuant to 42 U.S.C. § 1983 ("§ 1983"). Additionally, plaintiffs sued Officer Long for false imprisonment, invasion of privacy, assault, and battery. Officer Long moved for summary judgment on plaintiffs' claims. On March 6, 2001, this court granted Officer Long's motion with respect to plaintiffs' state law claims, but denied his motion with respect to plaintiffs' § 1983 claim.[1] Plaintiffs did not file a cross-motion for summary judgment, but noted in their response to Long's motion that there were no genuine issues of material fact and asserted the undisputed facts justified summary judgment in their favor. In the March 6th decision, this court *sua sponte* granted summary judgment against Officer Long on the issue of § 1983 liability. Officer Long now moves for reconsideration.[2]

---

[1] Judgment was entered in favor of the other defendants.

[2] Plaintiffs argue Officer Long's motion for reconsideration must be struck as untimely, pursuant to Fed.R.Civ.P. 59(e). Rule 59(e) provides that any motion to alter or amend a judgment must be filed no later than 10 days after entry of judgment. However, Fed.R.Civ.P. 6(a) provides that Saturdays, Sundays, and holidays should not be included in the 10 day total when a limitations period is less than 11 days. This rule also provides that the actual day judgment is entered should not be

111

## DISCUSSION

### I. Appropriateness of *sua sponte* summary judgment

A court may relieve a party from final judgment or order for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b) ("Rule 60(b)"). Long contends his motion for reconsideration should be granted because he had insufficient notice that this court was considering summary judgment against him. It is true that a court may not grant summary judgment *sua sponte* unless the losing party has notice that the court is considering summary judgment and the party has a fair opportunity to present evidence in opposition. *Acequia, Inc. v. Prudential Insurance Company of America*, 226 F.3d 798, 807 (7th Cir. 2000); *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). Long had sufficient notice and a fair opportunity to present evidence in opposition.

In support of his contention that he had insufficient notice, Long cites numerous cases where courts were found to have improperly granted summary judgment *sua sponte*. However, these cases are factually distinguishable. The cases cited involve situations where *neither* party had moved for summary judgment or where the losing party was not given a chance to address the material facts. *See Simpson*, 171 F.3d at 550-52 (granting summary judgment *sua sponte* without express notice is improper when neither party filed a motion for summary judgment and losing party had no opportunity to present its version of material facts); *Resolution Trust Corporation v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (granting summary judgment *sua sponte* without notice is improper when neither

---

included in the 10 day total. Officer Long's motion for reconsideration had to be filed by March 20, 2001. Officer Long filed his motion on the deadline. Additionally, Fed.R.Civ.P. 6(e) provides that when a party has the right to do some act after the service of a notice or other paper upon the party by mail, three days shall be added to the prescribed period. Therefore, Officer Long actually had until March 23, 2001 to file this motion. His motion is timely.

2

party moved for summary judgment); *English v. Cowell*, 10 F.3d 434, 435, 437 (7th Cir. 1993) (granting summary judgment *sua sponte* in favor of moving party is improper when nonmoving party is not given a chance to respond to the motion); *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 589 (7th Cir. 1992) (granting summary judgment *sua sponte* without notice is improper when outcome depended on disputed facts); *Malak v. Associated Physicians, Inc. et al.*, 784 F.2d 277, 279-81 (7th Cir. 1986) (when losing party is able to address material issues in responses to other motions, granting summary judgment *sua sponte* without notice is not a basis for reversal, even though neither party moved for summary judgment); *Acequia, Inc.*, 226 F.3d 798 at 807-08 (granting summary judgment *sua sponte* without notice is proper when losing party had opportunity to address the material facts pertaining to the claims on which summary judgment was granted).

The only cited case that is factually similar supports granting summary judgment *sua sponte* for plaintiffs. In *Goldstein v. Fidelity and Guaranty Insurance Underwriters, Inc.*, one party filed a motion for summary judgment and the district court granted summary judgment in favor of the nonmoving party. 86 F.3d 749, 750 (7th Cir. 1996). The district court did not expressly warn the parties prior to its ruling that it was considering granting summary judgment for the nonmoving party. *Id.* at 750-51. The Seventh Circuit found the losing party had sufficient notice because it had argued there were no genuine issues of material fact and knew that summary judgment was under consideration by the court. *Id.* at 751. The Seventh Circuit further explained that notice was sufficient because the losing party knew that if the court agreed there were no genuine issues of material fact but disagreed with the moving party's interpretation of the law, judgment would be entered for the nonmoving party. *Id.* Calling it "lawyerly game-playing," the Seventh Circuit rejected the losing party's argument that he was not allowed to contest the facts and he would have had a greater

3

incentive to seek out disputed facts had he known summary judgment against him was under consideration. *Id.*

As in *Goldstein*, this court agreed with Officer Long that there were no issues of material fact, but disagreed with his interpretation of the law. Therefore, summary judgment was entered against him. Officer Long had sufficient notice of this possibility because he argued there were no genuine issues of material fact and knew that if this court agreed with him about the facts and disagreed with him about the law, he risked a judgment in plaintiffs' favor.

Officer Long further contends he should have had the opportunity to offer additional facts into evidence and provide more detailed responses to dispute plaintiffs' statement of facts. This court disagrees. Officer Long had a sufficient opportunity to respond because this court rested its judgment solely on the law argued by Officer Long and facts which Officer Long consistently deemed as undisputed in his motion for summary judgment, his reply brief, his statement of facts, his response to plaintiffs' statement of facts, and his supplemental statement of facts. *See id* (losing party in a *sua sponte* summary judgment decision had necessary safeguards when no genuine issue of material fact existed); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute). Specifically, the judgment against Officer Long was based on the following undisputed facts: (1) Officer Long searched 30 students, an entire gym class; (2) the search was for missing money; and (3) Officer Long asked the students to remove their shirts and/or lower their pants for a visual inspection or an underwear waist band search. Because the judgment rested solely on undisputed facts, there would be no grounds for granting Officer Long's motion for reconsideration, even if notice was insufficient. *See Malak*, 784 F.2d at 280-81 (granting summary judgment *sua sponte* without notice is not reversible error when the losing

4

party could not raise issues to alter the entry of summary judgment) (internal citations omitted); *English*, 10 F.3d at 438 (harmless error doctrine saves premature rulings when the loser did not offer substantial opposition).

Additionally, this court thoroughly evaluated Officer Long's motion for reconsideration, which includes his additional facts, his more detailed responses to plaintiffs' facts, and his description of further evidence he would like to provide. Viewed in the light most favorable to Officer Long, none of this evidence would change the decision to grant summary judgment in plaintiffs' favor. Accordingly, Officer Long's contention that he had insufficient notice and was denied an opportunity to respond fails.

## II. Analysis based on undisputed facts

### A. Applicable search standard

Officer Long also challenges this court's finding that summary judgment against him was appropriate on the merits. First, he offers additional facts and evidence in his motion for reconsideration, attempting to establish that the search of the Marseilles students was not a police search. Officer Long contends this case should be governed by the less stringent standard used for school searches by school agents, rather than the probable cause standard used for police searches.[3] Student searches by school agents need only be (1) justified at the inception and (2) permissible in scope. *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (7th Cir. 1985). In the decision granting summary judgment against Officer Long, this court specifically stated that this issue need not be resolved for

---

[3] Officer Long admitted he believed he did not have probable cause to search the students. Motion For Reconsideration, Apdx. A at ¶ 7.

5

purposes of this case because even using the less stringent school search standard, no reasonable jury could find Officer Long conducted a constitutionally permissible search.[4]

**B. First prong of *T.L.O.***

This court found in its March 6th ruling that Officer Long's search was not justified at its inception because there was no individualized suspicion of the students who were searched. "A search is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating the law or the rules of the school." *Id.* It is undisputed that all 30 students in the class were searched. Instead, Officer Long disputes whether searching all 30 students is considered a blanket search. Specifically, he claims that individualized suspicion of a *group* of students is sufficient in the school setting. To support this proposition, Officer Long cites *Vernonia School District v. Acton*, 415 U.S. 646 (1995). *Acton* is factually distinguishable and does not support Officer Long's contention that his search of 30 students was justified. In *Acton*, the Court found that random urinalysis of student athletes for the purpose of drug testing was permissible under the Fourth Amendment. The Court's decision was based in part on the fact that only student athletes were subjected to this type of search. The Court stated, "Legitimate privacy expectations are even less with regard to student athletes. . . . By choosing to go out for the team, they voluntarily subject themselves to a degree of regulation even higher than that imposed on students generally." *Id.* at 657 (internal citations omitted). Plaintiffs were not searched as student athletes.

---

[4]It should be noted that the additional facts Officer Long supplied with his motion for reconsideration makes it *more* likely his search should be considered a police matter. Specifically, Officer Long offers evidence that he made the following statement to the students during the search: "At this point in time this is a school matter. Once the school bell rings and you guys are out of school after the end of the day it becomes a police matter. As long as this stays in the school, the school handles it. Once it becomes a police matter after the bells ring and if I find out who did it and I've got proof of it I'll refer you to probation." Motion For Reconsideration, Apdx. A at ¶ 2.

6

They were searched as part of a regular gym class, and they did not willingly subject themselves to this degree of intrusion. Moreover, *Acton* points out that the search in *T.L.O.*, the case on which Officer Long relies throughout his motion, was justified based on *individualized* suspicion of wrongdoing. *Id.* at 653.

Officer Long's claim of individualized group suspicion is insufficient to establish the search was justified at its inception. While it may be true there was reasonable suspicion to believe that someone in the gym class had stolen money, there were no facts that enabled Officer Long to particularize which students in the class might possess the money. Courts have consistently found particular suspicion to be necessary, with exceptions not relevant to this case, for a search to be reasonable. *See e.g., Cornfield v. Consolidated High School District*, 991 F.2d 1316, 1324 (7th Cir. 1993) (strip searches of students are unconstitutional when they are executed without any individualized suspicion and without reasonable cause); *Doe v. Renfrow*, 631 F.2d 91, 92-93 (7th Cir. 1980) (same); *Bellnier v. Lund*, 438 F.Supp. 47, 54 (N.D. NY 1977) (strip search of students for money are unconstitutional when school agents had no individualized suspicion). Officer Long's strip search of the entire group cannot be justified.[5]

---

[5] The lack of justification for Officer Long's search is further supported by the fact that a suspicion-based search may have been possible. Officer Long never interviewed the students privately to see if they knew who took the money. The students might have been more willing to divulge information if they were not surrounded by their peers. In fact, it was later revealed that the students in the gym class suspected one particular boy was the thief. *See* Long's Supplemental Facts at ¶ 2. Had Officer Long spoken to the students privately, the name of the suspected thief might have been revealed. *See Willis v. Anderson Community School Corp.*, 158 F.3d 415, 421 (7th Cir. 1998) ("It may be that when a suspicion-based search is workable, the needs of the government will never be strong enough to outweigh the privacy interests of the individual").

7

## C. Second prong of *T.L.O.*

This court further found in its March 6th opinion that Officer Long's search was not permissible in scope. A search is permissible when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Cornfield*, 991 F.2d at 1320. Officer Long contends there are disputed issues of material fact regarding the intrusiveness of the search. Specifically, Officer Long points out that not all students were asked to lower their pants. However, it is undisputed that all students were asked to remove their shirts and/or lower their pants to mid-thigh for a visual inspection or waist band check of their underwear. Motion For Reconsideration, Apdx. A at ¶ 3. Although not a fully nude search, this was a strip search and undoubtedly intrusive. In fact, *Acton* found that a urinalysis of student athletes to test for drug use was not overly intrusive, only after noting that the male students remained *fully clothed* and were only observed from behind, if at all. 515 U.S. at 658. In contrast, Officer Long asked the students to take off their shirts and sometimes lower their pants, while they stood directly in front of him. Furthermore, Officer Long was searching for a relatively small amount of money, not drugs.

This court found that Officer Long's level of intrusion was not justified by the object of the search, namely money. Officer Long contends that this court erred in distinguishing between searches for missing money and searches for drugs and weapons. In support of his argument, Officer Long cites *T.L.O.* However, there is an important distinction. In *T.L.O.*, it was held that courts should not decide whether some infractions are too trivial to justify a search. 469 U.S. at 342, n.9. Specifically, the Court stated that courts should "refrain from attempting to distinguish between rules that are important to the preservation of order in schools and rules that are not." *Id. T.L.O.* did not direct that

8

courts should refrain from deciding whether the nature of the search was too intrusive or unreasonable in light of the type of infraction at issue.

This court based its summary judgment decision on the relationship between the intrusiveness of the search and the object of the search, not on a conclusion that preventing thefts was unnecessary for the preservation of order in plaintiffs' school. Courts have distinguished between student strip searches for missing money and strip searches for more threatening items. These courts have found strip searches for missing money are unreasonable. *See e.g., Konop v. Northwestern Sch. Dist.*, 26 F.Supp.2d 1189, 1196 (D. S.D. 1998) (strip searching two female students without individualized suspicion for $200 is not reasonable); *Oliver v. McClung*, 919 F.Supp. 1206 (N.D. Ind. 1995) (a strip search of students to recover a minimal amount of stolen money is not reasonable).[6]

### III. Qualified immunity

Officer Long also disputes this court's finding that he is not entitled to qualified immunity. The issue of whether qualified immunity attaches is a question of law for the court to decide. *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989). "A qualified immunity analysis entails a purely objective inquiry to determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz v. Parrot*, 883 F.2d 551, 553 (7th Cir. 1989). It is the responsibility of the court "to determine whether at the time the alleged actions took place there was a substantial consensus of opinion that a course of conduct infringed on a right protected by the Constitution." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir. 1989). A

---

[6]In addition, the fact that Officer Long stopped requesting the students to drop their pants when he started searching them in pairs adds further support to this court's conclusion that Officer Long was not focused on using the least intrusive means of finding the missing money. If requiring the students to lower their pants were necessary for Officer Long's search purposes, he would have consistently made this request.

9

defendant's subjective beliefs about the search are irrelevant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Additionally, the determination of qualified immunity at the summary judgment stage is entirely appropriate. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

It was established nearly sixteen years ago that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to student searches by school agents. *T.L.O.*, 469 U.S. at 333. Furthermore, it was determined that "the legality of a search of a student should depend on the reasonableness, under all the circumstances, of the search." *Id.* at 341. The meaning of reasonableness was clearly articulated. *Id* (a search is reasonable if justified at its inception and reasonably related in scope to the circumstances which justified the search). Later cases further explained the meaning of reasonableness in the school context. *See e.g., Cornfield*, 991 F.2d at 1320 ("A highly intrusive search in response to a minor infraction would similarly not comport with the sliding scale advocated by the Supreme Court in *T.L.O.*").

At the time of Officer Long's search, there is no question that plaintiffs' Fourth Amendment rights were clearly established in the factual context of student searches by school agents. *See Singleton v. Board of Educ.*, 894 F.Supp. 386, 390 (D.Kan. 1995) (the law regarding student strip searches is clearly established); *Konop*, 26 F.Supp.2d at 1196 (denying qualified immunity because "the holding in *T.L.O.* is not, in any way, unclear or confusing").

Nevertheless, Officer Long asserts he is entitled to qualified immunity because there is no established law regarding (1) school locker room searches, (2) for missing money, (3) by a police officer acting upon the school's request,[7] (4) when no criminal consequences would follow.

---

[7]Officer Long asks this court to consider the fact that he is a police officer only when it is to his advantage. Throughout his summary judgment motions and his motion for reconsideration, Officer Long contends the *T.L.O.* standard is applicable because he was searching the students as an

10

Officer Long's focus on specific factual distinctions does not establish the uncertainty of the law in the school search context. Although the law must be clear in the particular factual context at issue for qualified immunity to be inapplicable, this does not mean a case scenario exactly like the one at hand must have been addressed by courts in the past. Such a rigid requirement would be equivalent to granting school agents absolute immunity and, thus, would swallow the qualified immunity rule. More general similarities are sufficient as long as they provide adequate warning that a particular behavior would be illegal. *Anderson*, 483 U.S. at 639. *See also Konop v. Northwestern School District*, 26 F.Supp.2d 1189, 1195 (D. SD 1998) (*United States v. Lanier*, 520 U.S. 259 stands for the proposition that general principles of law can provide fair warning).

In further support of his legal uncertainty contention, Officer Long cites several cases in which strip searches of students have been held to be legal. The facts in those cases are clearly distinguishable from the case at bar.[8] Moreover, the courts in those cases applied the same clear *T.L.O.* standard. They found the searches to be reasonable, after considering *all the circumstances* of the search. *See* 469 U.S. at 341 (italics added). In contrast, no reasonable jury could find Officer Long's search to be reasonable, after considering *all the circumstances* of the search. Officer Long cannot establish legal uncertainty by pointing to student search cases with circumstances mandating

---

agent of the school. Because the outcome would not be different, this court has consistently applied the undisputed facts to the less stringent *T.L.O.* standard. This court considers Officer Long an agent of the school for purposes of the qualified immunity issue. The alternative would be to consider the law, on all issues in this case, from the standpoint that Officer Long searched the students as a police officer. Officer Long admits he did not have probable cause. Motion For Reconsideration, Apdx. A. at ¶ 7. Probable cause is a requirement for a search when the special exception for school agents does not apply. *T.L.O.*, 469 U.S. at 358, 366-67.

[8]The cases cited by Officer Long involved searches for drugs. *See Cornfield v. Consolidated High School District*, 991 F.2d 1316 (7th Cir. 1993); *Vernonia v. Acton*, 515 U.S. 646 (1995).

a different outcome. *See Oliver et al. v. McClung,* 919 F.Supp. 1206, 1218 (N.D. IN 1995) ("the mere fact that Defendants can cite a few cases since [*T.L.O.*] where strip searches have been held to be reasonable under the circumstances does not change the facts of this case or the state of the law at the time this search was conducted"). Because the case law has been clear for sixteen years that student searches by school agents in schools must be reasonable, Officer Long is not entitled to qualified immunity.[9]

## **CONCLUSION**

Officer Long's motion for reconsideration is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

March 27, 2001

---

[9] Even if more factual similarities were required, Officer Long would not prevail. Since at least 1993 it has been clear that blanket strip searches of students are unconstitutional. *See Cornfield,* 991 F.2d at 1324 (strip searches of students are unconstitutional when they are executed without any individualized suspicion and without reasonable cause). *See also T.L.O.,* 469 U.S. at 342 ("Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where other safeguards are available to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field") (internal citations omitted).

12